[Cite as *State v. Crayton*, 2017-Ohio-705.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | | **CASE NO. 2016-A-0031** |
| - vs - | : | |
| FRANK ROOSEVELT CRAYTON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas.
Case No. 2015 CR 00115.

Judgment: Affirmed.

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

*Ariana E. Tarighati*, Law Offices of Ariana E. Tarighatti, L.P.A., 34 South Chestnut Street, Suite 100, Jefferson, OH 44047-1092 (For Defendant-Appellant).

TIMOTHY P. CANNON, J.

{¶1} Appellant, Frank Roosevelt Crayton, appeals from the April 12, 2016 judgment of the Ashtabula County Court of Common Pleas, convicting him of one count of trafficking in heroin, a felony of the fourth degree, in violation of R.C. 2925.03(A)(2), accompanied by a forfeiture specification for the forfeiture of $1,504 in cash; and one count of possession of heroin, a felony of the fourth degree, in violation of R.C. 2925.11(A).

{¶2} Appellant was indicted on the above offenses by the Ashtabula County Grand Jury on February 26, 2015, and arraigned on March 16, 2015. Appellant entered a plea of "Not Guilty" to the charges.

{¶3} On April 30, 2015, appellant filed a motion to suppress. In his motion to suppress, appellant argued that based on the totality of the circumstances, the arresting officer lacked reasonable, articulable suspicion to believe appellant was armed when he conducted the initial frisk of appellant's person. Appellant also argued it was unlawful to place him under arrest for possession of marijuana, a minor misdemeanor.

{¶4} Appellee, the state of Ohio, filed a memorandum in opposition to appellant's motion to suppress on May 12, 2015. A suppression hearing was held on June 16, 2015. Lieutenant Rodney Blaney of the Ashtabula City Police Department testified as the state's witness, and the state entered three photographs of appellant's injuries as exhibits. The statement of facts that follows is based on evidence presented at the suppression hearing.

{¶5} Lt. Blaney testified that on December 6, 2014, he accompanied a victim of a fight that had occurred at the Thirsty Bird bar in Ashtabula to the Ashtabula County Medical Center. Lt. Blaney was at the hospital with the victim when he received a call regarding a second fight that had broken out at Thirsty Bird. Lt. Blaney left the hospital to respond to the call with other officers.

{¶6} Upon Lt. Blaney's arrival at Thirsty Bird in a marked police cruiser with the lights and sirens on, a group of approximately 60 people scattered from the front entrance. Two men, however, remained standing in the parking lot. Lt. Blaney noticed

2

that one of the men appeared to be seriously injured and bleeding from his head. He recognized that man as appellant and called for an ambulance.

{¶7} Lt. Blaney approached appellant and was concerned because appellant was bleeding from his forehead and his right cheek and had a large amount of swelling on his forehead and the right side of his jaw. He questioned appellant about the fight and about his injuries and took pictures of the injuries. Lt. Blaney noticed appellant was intoxicated and exuded a strong smell of alcohol and marijuana. Upon further questioning, appellant ignored Lt. Blaney and attempted to walk away. Lt. Blaney directed him to wait for the ambulance.

{¶8} To prepare appellant for the arrival of the paramedics, Lt. Blaney decided to frisk him. Lt. Blaney testified he believed the frisk was necessary because (1) he was responding to a call of violent behavior; (2) it was common for people at Thirsty Bird to be armed; and (3) appellant had established a reputation as a narcotics dealer and as being armed on occasion. The officer also testified he had experience with appellant from a previous arrest, which involved a large amount of marijuana.

{¶9} While another officer stood by, Lt. Blaney conducted a frisk of appellant's person for weapons. Lt. Blaney testified he felt a large lump in the right front pocket of appellant's pants consistent with narcotics. He removed the lump and recognized the contents of the bag through visual observation and scent as marijuana.

{¶10} Lt. Blaney testified he arrested appellant, secured him, and continued the frisk for weapons and other contraband. Lt. Blaney testified he felt another lump at appellant's left coat pocket consistent with crack cocaine or heroin. Lt. Blaney secured

3

it and identified it through visual observation and scent as a bag of "brown powder or a rock of brown powder heroin."

{¶11} The ambulance arrived, and Lt. Blaney secured appellant in the ambulance. Lt. Blaney followed the ambulance to the hospital. He waited at the hospital while appellant received medical treatment. When appellant was released from the hospital, Lt. Blaney transported him to the jail for booking.

{¶12} After the hearing, the trial court allowed additional briefing on the motion to suppress. On June 23, 2015, appellant filed an argument in support of the motion to suppress. The state filed a memorandum in opposition on June 30, 2015. On July 7, 2015, the trial court made certain factual findings and denied appellant's motion to suppress, stating, "the warrantless search and seizure of Defendant was permissible pursuant to the doctrine of exigency."

{¶13} The matter proceeded to a jury trial on April 5, 2016. Appellant was found guilty of the charges and specification as noted above.

{¶14} Appellant was sentenced on April 8, 2016. The trial court merged Count 2 (possession of heroin) with Count 1 (trafficking in heroin) and imposed an 18-month prison sentence. The trial court additionally suspended appellant's driver's license for two years and ordered the $1,504 in cash forfeited. The judgment entry of sentence was filed April 12, 2016.

{¶15} On April 28, 2016, appellant filed a timely notice of appeal from the sentencing entry. Appellant asserts two assignments of error on appeal:

> [1.] The trial court erred to the prejudice of the defendant-appellant when it denied the motion to suppress where the search was in violation of the Fourth, Sixth and Fourteenth amendments to the United States Constitution.

4

[2.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence in violation of Article IV of the Ohio Constitution.

{¶16} Under his first assignment of error, appellant argues the trial court erred in denying his motion to suppress.

{¶17} An appellate court's review of a decision on a motion to suppress involves issues of both law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. During a suppression hearing, the trial court acts as trier of fact and sits in the best position to weigh the evidence and evaluate the credibility of the witnesses. *Id.,* citing *State v. Mills,* 62 Ohio St.3d 357, 366 (1992). Accordingly, an appellate court will uphold the trial court's findings of fact provided they are supported by competent, credible evidence. *Id.,* citing *State v. Fanning,* 1 Ohio St.3d 19, 20 (1982). Once an appellate court determines whether the trial court's factual findings are supported by the record, the court then engages in a de novo review of the trial court's application of the law to those facts. *State v. Lett,* 11th Dist. Trumbull No. 2008-T-0116, 2009-Ohio-2796, ¶13, citing *State v. Djisheff,* 11th Dist. Trumbull No. 2005-T-0001, 2006-Ohio-6201, ¶19. We find the trial court's findings of facts are supported by competent, credible evidence and hereby approve and adopt them as our own.

{¶18} Under the Fourth Amendment, searches and seizures conducted without a warrant based on probable cause are unreasonable unless the search falls within an exception to the warrant requirement. *Katz v. United States,* 389 U.S. 347, 357 (1967). There are three general categories in which encounters between citizens and police officers are classified. The first is a consensual encounter; the second is a brief

5

investigatory stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968); and the third is formal arrest. *State v. Long*, 127 Ohio App.3d 328, 333 (4th Dist.1998). Each category requires a heightened level of evidence and circumstances to withstand a Fourth Amendment challenge.

{¶19} In an investigatory stop, an officer may briefly detain an individual if the individual is engaged in suspicious behavior. *Terry v. Ohio*, 392 U.S. 1 (1968). To justify an investigatory stop, now known as a *Terry* stop, the officer must be able to "point to specific and articulable facts which, taken together with rational inferences with those facts, reasonably warrant that intrusion." *Id.* at 21. "'The reasonable suspicion necessary' to conduct an investigatory stop 'involves a consideration of "the totality of the circumstances."'" *State v. Parsons*, 11th Dist. Portage No. 2015-P-0084, 2016-Ohio-8109, ¶22, quoting *Maumee v. Weisner*, 87 Ohio St.3d 295, 299 (1999) (citation omitted).

{¶20} On the night of December 6, 2014, Lt. Blaney was responding to a call of a second fight at the Thirsty Bird bar after accompanying a victim to the hospital from the first fight. Upon arrival at the bar, a large group of people scattered, but appellant remained in the parking lot speaking with a second person. Lt. Blaney recognized appellant and observed appellant was bleeding from his head, indicating he was part of the fight to which Lt. Blaney was responding. The trial court found appellant was badly injured and that his face and shirt were covered in blood. Appellant ignored Lt. Blaney when the officer attempted to question him about the fight. The trial court found appellant did not acknowledge the officer and attempted to walk away from him. *See State v. Aguirre*, 11th Dist. Portage No. 2010-P-0057, 2012-Ohio-644, ¶34, quoting

6

*State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, ¶47 (citations omitted) ("'evasive behavior is a pertinent factor in determining reasonable suspicion'"). While Lt. Blaney was attempting to interact with him, appellant appeared intoxicated and smelled very strongly of alcohol and marijuana. The trial court also found Lt. Blaney knew appellant was a drug dealer and was occasionally armed, and he had previously arrested him on drug charges for which appellant was convicted. *See, e.g.*, *State v. McGary*, 11th Dist. Trumbull No. 2006-T-0127, 2007-Ohio-4766, ¶24 (officers' familiarity with the defendant from prior arrests and investigatory stops was one factor the court considered in the totality of the circumstances). Due to the seriousness of the injuries, Lt. Blaney had reasonable suspicion that a felony assault had taken place. The totality of the circumstances warranted the detention of appellant to investigate his involvement in the fight to which Lt. Blaney was responding and appellant's possession of drugs.

{¶21} Appellant argues that under the emergency aid exception, Lt. Blaney was not justified in conducting an investigatory stop of appellant because his injuries were not life threatening or so serious that he required immediate medical attention.

{¶22} Under the community caretaking/emergency aid exception to the Fourth Amendment, police officers are permitted to "'stop a person to render aid if they reasonably believe that there is an immediate need for their assistance to protect life or prevent serious injury.'" *Parsons*, *supra*, at ¶26, quoting *State v. Dunn,* 131 Ohio St.3d 325, 2012-Ohio-1008, syllabus.

{¶23} Lt. Blaney testified that appellant was badly injured. The trial court accepted this as fact, stating, "[i]ndeed, the photographs taken by Lt. Blaney reveal that Defendant's face and shirt were covered in blood, and his jaw was swollen to twice its

7

normal size. It also appears Defendant's nose was broken." Lt. Blaney also testified he was concerned for appellant's safety because of the injuries and because the officer observed appellant was intoxicated from his gait, speech, and the smell of alcohol that emanated from him. The trial court found that in order to provide care for appellant's injuries and to prevent further harm, Lt. Blaney called an ambulance. It was reasonable, under the emergency aid exception, for Lt. Blaney to briefly detain appellant and perform a temporary investigation of his safety and the severity of his injuries in order to prevent further injury. *See, e.g.*, *State v. Engle*, 2d Dist. Montgomery No. 25226, 2013-Ohio-1818, ¶21.

{¶24} Appellant next argues the motion to suppress should have been granted because Lt. Blaney's initial frisk of appellant's person was not based upon the officer's reasonable fear for his safety or the safety of another. Appellant maintains Lt. Blaney lacked any reasonable and articulable suspicion to believe appellant was armed or otherwise a danger and that Lt. Blaney never provided any basis for the frisk other than that he had called for an ambulance.

{¶25} "Where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others." *State v. Bobo*, 37 Ohio St.3d 177 (1988), paragraph two of the syllabus. "[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry, supra*, at 27.

8

{¶26} According to Lt. Blaney's suppression hearing testimony, he frisked appellant, among other reasons, for the safety of the medical personnel who would be transporting appellant to the hospital in the ambulance. Lt. Blaney testified he was concerned appellant was armed due to

> the nature of the response of the, the violent behavior. Two, the area. It's very common for people to be armed at that establishment. We've had number of calls [sic] that have – of violence and shots fired and weapons offenses, as well as, you know, strong-arm offenses. * * * [Appellant] has established a reputation in the City of Ashtabula for, one selling narcotics, and for, two, being armed on occasion.

{¶27} The trial court found Lt. Blaney knew appellant was a drug dealer who was occasionally armed and that Lt. Blaney searched appellant for weapons because appellant had just been involved in a violent altercation. Additionally, appellant ignored and walked away from Lt. Blaney when he asked appellant about the fight and his injuries. Because of his experience with appellant, the area, the violent offense for which he was called to the scene, and appellant's evasive behavior, Lt. Blaney was reasonable in suspecting appellant may be armed. Therefore, it was reasonable for Lt. Blaney to frisk appellant for weapons in order to ensure the safety of the medical personnel transporting appellant to the hospital.

{¶28} Appellant further argues Lt. Blaney did not have probable cause to arrest appellant when he found a minor misdemeanor amount of marijuana in appellant's pocket, and, therefore, Lt. Blaney was not justified in searching appellant incident to arrest.

{¶29} Under the "plain feel" doctrine, if in the process of conducting a limited pat down search for weapons an officer detects an object whose criminal character is

9

immediately apparent to him, he is justified in seizing the object from the pocket of the person being searched. *State v. Helton*, 11th Dist. Ashtabula No. 2005-A-0043, 2006-Ohio-2494, ¶38.

{¶30} The trial court found that Lt. Blaney's pat down of defendant for weapons "initially produced a large bag of marijuana found in the front pocket of Defendant's pants. * * * Lt. Blaney continued the frisk, and he found a bag of heroin in Defendant's coat pocket." Lt. Blaney was justified in conducting the pat down of appellant's outer clothing for weapons. He testified, "[d]uring the initial pat down, I felt a large lump in his right coin pocket, front pants pocket, that was consistent with narcotics." He further testified, "I continued to go around the rest of his body * * * and check for weapons and/or contraband. I went around to the rest of his pockets and areas * * * in which case I located a second lump that was consistent with another bag of drugs." Because the criminal character of the narcotics seized from appellant was immediately apparent to Lt. Blaney while he was conducting a lawful, limited pat down search of appellant's outer clothing, he was justified in seizing the objects from appellant's pockets.

{¶31} Appellant's first assignment of error is without merit.

{¶32} With regard to his second assignment of error, appellant argues his convictions for possession of heroin and trafficking in heroin were not supported by the greater amount of competent, credible evidence to prove guilt beyond a reasonable doubt.

{¶33} To determine whether a verdict is against the manifest weight of the evidence, a reviewing court must consider the weight of the evidence, including the credibility of the witnesses and all reasonable inferences, to determine whether the trier

of fact "'lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). "This court [is] not in a position to view the witnesses who testified below and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the proffered testimony." *State v. Long*, 127 Ohio App.3d 328, 335 (4th Dist.1998) (citations omitted). Therefore, in weighing the evidence submitted at a criminal trial, an appellate court must give substantial deference to the factfinder's determinations of credibility. *State v. Tribble*, 2d Dist. Montgomery No. 24231, 2011-Ohio-3618, ¶30.

**{¶34}** We are mindful that the jury, as the trier of fact, is entitled to believe all, part, or none of a witness's testimony. *State v. Williams*, 11th Dist. Lake No. 2012-L-078, 2013-Ohio-2040, ¶21 (citation omitted). "The trier of fact is in the best position to evaluate inconsistencies in testimony by observing the witness's manner and demeanor on the witness stand—attributes impossible to glean through a printed record." *Id.*; *see also State v. Barnes*, 11th Dist. Portage No. 2012-P-0133, 2013-Ohio-2836, ¶49 ("we must defer to the weight and credibility the jury gave to the evidence in this case").

**{¶35}** Appellant maintains he did not possess heroin pursuant to R.C. 2925.11(A), which states: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

**{¶36}** At trial, the jury heard testimony from Lt. Blaney on behalf of the state that during his pat down of appellant he retrieved a "baggie that had frayed edges around it, and it was tied off * * * [t]hat had the brown rock-like subject − or substance that I

11

identified from my training and experience as being brown powder heroin." Lt. Blaney further testified that when he got back to the police station he conducted a test on the substance he suspected to be heroin using the Sirchie NARK test kit, and it reacted positive for the presence of heroin.

{¶37} Appellant argues Lieutenant Jason Erwin of the Ashtabula Police Department, who also responded to the call at Thirsty Bird on December 6, 2014, and was a state's witness at trial, testified he did not see the heroin recovered from appellant's person. When questioned whether he was aware of Lt. Blaney performing a pat down of appellant, Lt. Erwin testified he "did notice a pat-down began," but that he "wasn't paying specific attention to them." Lt. Erwin testified he heard Lt. Blaney "say something to the effect of, what is this, or what's in your pocket," and when Lt. Erwin looked over he saw Lt. Blaney holding what appeared to be marijuana. However, Lt. Erwin testified he did not observe any other items being retrieved, stating, "[a]gain, I wasn't paying too close attention to their activities."

{¶38} When appellant testified to the events of December 6, 2014, on his own behalf, he denied he had anything on his person other than the marijuana and cash, and he specifically denied he possessed heroin. The jury was entitled to believe Lt. Blaney's testimony over appellant's testimony. We, therefore, cannot conclude the jury lost its way in returning a guilty verdict for the charge of possession of heroin, in violation of R.C. 2925.11(A).

{¶39} Appellant argues that even if he was in possession of heroin, the only evidence of trafficking in heroin was the $1,504 in cash that was also found on his

person, and appellant gave a plausible explanation for the source of that money.  R.C. 2925.03(A)(2) states:

> No person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

{¶40} At trial, Scott Miller testified for the state.  He was the forensic scientist with the Bureau of Criminal Investigation who tested the suspected marijuana and heroin collected from appellant by Lt. Blaney.  Mr. Miller testified the suspected heroin tested positive for the presence of a controlled substance.  Both Lt. Blaney and Mr. Miller testified the heroin collected from appellant weighed 1.38 grams, an amount which Lt. Blaney stated if used at one time would result in "certain death."  He explained a common amount of one dose of heroin is typically "around an eighth or less of a gram."  Lt. Blaney also testified he collected cash from appellant's person, primarily in $20.00 bills, which totaled $1,504.  Lt. Blaney testified he found the fact the cash was primarily in $20.00 bills suspicious because that is the common denomination of money exchanged in a drug transaction.

{¶41} Jonathan Wagner, an employee of Presque Isle Downs and Casino, testified for the defense.  He stated appellant's Player's Club Card, which he described as a player tracking card, "identifies you as the player.  It identifies what you spend on a machine, what comes out of a machine and associates it to your player."  He testified patrons at the casino can decide whether to use their cards for casino activities, and the card cannot track wins or losses for activities where it is not used.  He explained

13

appellant's Player's Card was used on December 3, 2014, and the person who used it that day won $36.75 at the casino.

{¶42} Appellant testified that on December 3, 2014, he went to Presque Isle Downs and Casino with his girlfriend. He stated he did not use his Player's Card the entire time he was at the casino that day, specifically not when he played poker. Appellant testified he won a total of $1,300 at the casino, which he intended to use to buy Christmas gifts. Appellant further explained that on December 6, 2014, he lived "not even a five-minute walk" from Thirsty Bird. He testified he brought a total of $1,550 in cash to the bar that night, including his casino winnings from December 3, 2014. He stated he brought the money to the bar because he planned to travel to Cleveland to buy Christmas gifts and did not intend to go home beforehand.

{¶43} The jury was permitted to determine the credibility of the witnesses. In considering the foregoing testimony, the jury was permitted to make reasonable inferences from the facts to find that the cash was not the product of casino winnings, that it was generated from the sale of narcotics, and that appellant violated R.C. 2925.03(A)(2). We cannot conclude the jury lost its way.

{¶44} Appellant's second assignment of error is without merit.

{¶45} For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, P.J.,

COLLEEN MARY O'TOOLE, J.,

concur.


14