[Cite as *State v. Craig*, 2017-Ohio-8939.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2016-L-113** |
| JAMES D. CRAIG, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2015 CR 000634.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, and *Karen A. Sheppert*, *Paul E. Kaplan*, and *Taylir K. Linden*, Assistant Prosecutors, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Mandy J. Gwirtz*, Mandy Gwirtz, LLC, 20050 Lakeshore Boulevard, Euclid, OH 44123 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} Appellant, James D. Craig, appeals his conviction on eight felony sexual offenses, including rape and gross sexual imposition. Appellant challenges the sufficiency and manifest weight of the evidence, the trial court's failure to sever three charges, and two evidentiary rulings. We affirm.

{¶2} Appellant and Jasmine Cleckner married in May 2003. Within a year, they

had a daughter, J.C. Shortly afterward, they moved to a home in Leroy Township, Lake County, Ohio. Over the next five years they had two sons.

{¶3} Through the years, Jasmine obtained a degree and had a full-time job working with computers. At some point, appellant returned to school to obtain his degree. Since he had more flexibility, he often cared for the children.

{¶4} The Leroy Township home has three stories, three bedrooms and two bathrooms. Until May 2014, the upstairs bedroom was solely occupied by appellant's father. J.C. shared a bedroom with her two brothers and appellant and Jasmine shared the third bedroom.

{¶5} Jasmine has two sisters, Lea Mitchell and Adrianna DiDomenico, both West Virginia residents. In July 2015, Lea visited Jasmine and their father, Carl Cleckner in Leroy. At the conclusion of the visit, J.C. traveled with Lea to West Virginia to spend a few weeks with her maternal grandmother, Jeanette DiDomenico. During the car ride, Lea observed J.C., then eleven, behaving differently than the last time she saw her. Instead of being talkative, J.C. was withdrawn and wore headphones throughout the trip.

{¶6} At the time of this visit, Adrianna DiDomenico, 18 years old, resided with her mother, Jeanette, and father, William DiDomenico. Sensing issues, Jeanette asked Adrianna to talk with J.C. When Adrianna initially saw J.C., Adrianna sensed that J.C. had recently been crying and was upset. She persuaded J.C. to talk with her on the front porch. J.C. became even more upset and cried uncontrollably. J.C. ultimately told Adrianna that appellant had sexually molested her multiple times during the last eighteen months and described the nature of the acts.

2

{¶7} After J.C. was calmer, Adrianna had her write the details. Jeanette then contacted the Child Advocacy Center in Charleston, West Virginia, and arranged for the center's director, Maureen Runyon, to interview J.C. During the recorded interview, J.C. again gave a detailed description of appellant's sexual abuse.

{¶8} According to J.C., the behavior began one night when she awoke to appellant performing cunnilingus on her. Over the following weeks, appellant repeated this act numerous times in multiple locations in their Leroy home. J.C. further asserted that he tried to entice her into willing participation by promising her "benefits." For example, he would allow her additional time on the internet without parental controls. In time, appellant engaged in additional sexual acts: (1) rubbing his finger or a vibrator on her vaginal area; (2) inserting his finger into her vagina; (3) inserting the vibrator into her vagina; (4) forcing her to masturbate him; and (5) on one occasion, appellant placed his genitals on her lips, with J.C. refusing to open her mouth. J.C. further said that appellant had her "dress up" in her mother's lingerie and panties, pose provocatively, and that he photographed her using a red digital camera.

{¶9} A few days after the interview, J.C. underwent a physical examination by a medical doctor. She had no physical signs of sexual abuse.

{¶10} The information gathered was conveyed to the Lake County Sheriff's Department and used to obtain a search warrant for the Leroy residence. In executing the warrant following appellant's arrest, the authorities failed to locate digital photographs of J.C. However, they seized a red digital camera and the described vibrator. The authorities also found two computer disks containing 749 photographs/videos of child pornography, with many of pictures featuring girls

appearing to be the same age as J.C., locked in a gun cabinet that Jasmine gifted to appellant.

{¶11} Within three months of appellant's arrest, he was indicted on eleven counts including: three counts of rape, a first-degree felony under R.C. 2907.02(A)(1)(b); three counts of gross sexual imposition, a third-degree felony under R.C. 2907.05(A)(4); two counts of importuning, a third-degree felony under R.C. 2907.07(A) & (C)(1); one count of pandering obscenity involving a minor, a second-degree felony under R.C. 2907.321(A)(1); one count of pandering obscenity involving a minor, a fourth-degree felony under R.C. 2907.321(A)(5); and one count of pandering sexually oriented matter involving a minor, a second-degree felony under R.C. 2907.322(A)(1).

{¶12} In writing, J.C. claimed that appellant required her to view internet pornography on various devices and to draw pornographic images. During its investigation, the sheriff's department retained J.C.'s Kindle to review her Internet history. To access the Kindle, Jasmine asked J.C. to provide her the password. J.C. did so, but recanted her claim that appellant forced her to view pornographic material and acknowledged that she viewed the material herself out of curiosity. J.C. told her mother that she lied out of embarrassment. She also admitted that she lied about being required to draw pornographic images.

{¶13} While the charges were pending, Jasmine continued to search and cleanout the Leroy home. In the process, she found a small baggy containing 36 pubic hairs in appellant's baseball card collection stored in the master bedroom closet and a garbage bag in the garage attic containing multiple pairs of toddler size 3T underwear

4

belonging to J.C., along with a t-shirt belonging to appellant. Jasmine testified that J.C. wore 3T until the fourth grade, and that she normally discarded J.C.'s underwear when she outgrew them.

{¶14} A six-day jury trial went forward in August 2016. In addition to J.C.'s testimony, the state called Adrianna to testify regarding the statements J.C. made to her during J.C.'s initial disclosure. The state also presented considerable evidence as to changes in J.C.'s personality both before and after her disclosure. Appellant rested without presentation of evidence. Appellant was found not guilty of the first of the two importuning counts and two of the three pandering counts, but guilty of the remaining eight counts.

{¶15} The trial court ordered an aggregate prison term of 91.5 years to life: three terms of twenty-five years to life on the rape counts; three five-year terms on the gross sexual imposition counts; and eighteen months on the pandering count, all time to be served consecutively. The sole importuning count was merged for purposes of sentencing.

{¶16} Appellant asserts five assignments of error:

{¶17} "[1.] The trial court erred when it denied defendant-appellant's motion for severance of offenses for trial, in violation of his rights to due process of law under the Fourteenth Amendment of the U.S. Constitution and Sections 10 and 16, Article 1 of the Ohio Constitution.

{¶18} "[2.] The trial court violated the defendant-appellant's constitutional right to fair trial and due process as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Sections 5 and 10, Article 1 of the Ohio Constitution

5

when it admitted inadmissible hearsay testimony.

{¶19} "[3.] The defendant-appellant was deprived of his constitutional rights to fair trial and due process when the trial court admitted irrelevant and misleading evidence.

{¶20} "[4.] The trial court erred to the prejudice of the defendant-appellant in denying his motion for acquittal made pursuant to Crim.R. 29(A).

{¶21} "[5.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."

{¶22} The first assignment asserts that the trial court's decision to overrule his motion to sever three counts for separate trial denied him a fair trial on the remaining eight counts.

{¶23} Appellant moved to sever the following charges: count 7, importuning; count 9, pandering obscenity involving a minor; and count 11, pandering sexually oriented material involving a minor. These counts are primarily based upon appellant's possession of the two disks of child pornography found in appellant's gun cabinet. The disks do not contain photographs of J.C., but there are numerous pictures of girls appearing to be close in age.

{¶24} "Pursuant to Crim.R. 8(A), '[t]wo or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character * * *.' Generally, joinder of offenses is liberally permitted in order to conserve judicial resources, prevent incongruous results in successive trials, or to diminish inconvenience to witness. Thus, the law generally favors joinder of multiple offenses in

a single trial.

**{¶25}** "However, pursuant to Crim.R. 14, it may be necessary to require separate trials to prevent prejudice. * * * Crim.R. 14 reads, in pertinent part:

**{¶26}** "'If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires." (Citations omitted.) *State v. Quinones*, 11th Dist. Lake No. 2003-L-015, 2005-Ohio-6576, ¶35-37.

**{¶27}** "'When a defendant claims that joinder is improper, he must affirmatively show that his rights have been prejudiced.' Crim.R. 14; *Quinones* at ¶38; *State v. Roberts* (1980), 62 Ohio St.2d 170, 175, 405 N.E.2d 247. 'The accused must provide the trial court with sufficient information demonstrating that he would be deprived of the right to a fair trial if joinder is permitted.' *State v. Lott* (1990), 51 Ohio St.3d 160, 163, 555 N.E.2d 293. 'The state may negate the defendant's claim of prejudice by demonstrating either of the following: (1) that the evidence to be introduced relative to one offense would be admissible in the trial on the other, severed offense, pursuant to Evid.R. 404(B); or (2) that, regardless of the admissibility of such evidence, the evidence relating to each charge is simple and direct.' *Quinones* at ¶39, citing *State v. Franklin* (1992), 62 Ohio St.3d 18, 122 580 N.E.2d 1. 'The former is generally referred to as the "other acts test," while the latter is known as the "joinder test."' *Quinones* at ¶39, citing *Lott* at 163, 555 N.E.2d 293." *State v. Brunelle-Apley*, 11th Dist. Lake No. 2008-L-014, 2008-Ohio-6412, ¶107.

{¶28} Regarding the Evid.R. 404(B) test, the state maintains that, in relation to the rape and gross sexual imposition counts, the child pornography disks are admissible to prove both offenses because they establish that appellant acted in accordance with an underlying plan. The state asserts that the plan consisted of using child pornography to "groom" J.C. into participating in sexual activity. However, although J.C. testified that appellant showed pornography to her on multiple occasions, she did not specifically testify that appellant showed her the child pornography on the two disks. Given that the state failed to establish a nexus, the disks are not admissible to show a plan.

{¶29} Nevertheless, evidence pertaining to each charge is simple and direct. The remaining eight charges against appellant consisted of three rape counts, three gross sexual imposition counts, one importuning count, and one pandering court. As to the first six counts, the state had to prove that appellant engaged in either sexual conduct, rape or sexual contact, gross sexual imposition with J.C., and that she was then under the age of thirteen. R.C. 2907.02(A)(1)(b) & 2907.05(A)(4). On the remaining importuning count, the state had to prove that appellate solicited J.C., a minor, to engage in sexual activity with him. R.C. 2907.07(A). On the remaining "pandering" count, the state had to prove that he created, reproduced, or published obscene material that has a minor as a participant. R.C. 2907.321(A)(5).

{¶30} Given the nature of the basic elements of the eleven counts, the provocable evidence necessary to prove those counts is simple and direct. The rape and gross sexual imposition counts are based upon separate sexual acts, with or without the disks, while the three counts appellant sought to sever are primarily based on the disks.

8

**{¶31}** The decision to grant or deny a motion to sever lies within the trial court's sound discretion. *State v. Hupp*, 11th Dist. Lake No. 2008-L-052, 2009-Ohio-1441, ¶18. "The phrase 'abuse of discretion' connotes a lack of sound, reasonable, and legal decision-making." *State v. Barker*, 11th Dist. Portage No. 2013-P-0084, 2014-Ohio-4131, ¶68. Given that the "joinder" test is satisfied, appellant fails to establish error or prejudice. The first assignment is without merit.

**{¶32}** The second assignment asserts that the trial court erred in allowing Adrianna to testify regarding J.C.'s initial statements to her. Appellant asserts they are inadmissible hearsay, not qualifying as excited utterances.

**{¶33}** Adrianna testified that J.C. was very upset at the outset of their talk and was crying so hard that she could not speak. The trial court then allowed Adrianna to testify as to the statements.

**{¶34}** Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay cannot be admitted into evidence unless one of the recognized exceptions to the general rule applies. *State v. Butcher*, 170 Ohio App.3d 52, 2007-Ohio-118, 866 N.E.2d 13, ¶24.

**{¶35}** One hearsay exception is an excited utterance: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2)

**{¶36}** "For an alleged excited utterance to be admissible, the following must exist: (1) an event that was startling enough to produce a nervous excitement in the declarant; (2) the statement must have been made while under the stress of excitement

9

caused by the event; (3) the statement must relate to the startling event; and (4) the declarant must have personally observed the startling event. *State v. Taylor*, (1993), 66 Ohio St.3d 295, 300-301, 612 N.E.2d 316.

**{¶37}** "In addition, when determining whether a statement is an excited utterance, the court should consider: (a) the lapse of time between the event and the declaration; (b) the declarant's mental and physical condition; (c) the nature of the statement; and (d) the influence of intervening circumstances. *State v. Humphries*, (1992), 79 Ohio App.3d 589, 598, 607 N.E.2d 921. 'There is no *per se* amount of time after which a statement can no longer be considered to be an excited utterance. The central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may *not* be a result of reflexive thought.' *Taylor*, supra, at 303, 612 N.E.2d 316." *State v. Kalia*, 11th Dist. Trumbull No. 2002-T-0023, 2003-Ohio-4226, ¶17-18.

**{¶38}** The requirements for the admission of an excited utterance is not applied as stringently in sexual abuse cases involving young children as it is in cases involving an adult. *State v. Kincaid*, 9th Dist. Lorain Nos. 94CA005942 & 94CA005945, 1995 WL 608407, *5 (Oct. 18, 1995). "'[C]hildren are more likely to remain in a state of nervous excitement longer than would an adult in cases involving hearsay statements by a child declarant.'" *State v. Wilson*, 4th Dist. Scioto No. 13CA3542, 2015-Ohio-2016, ¶90, quoting *State v. Taylor*, *supra*, at 304, 612 N.E.2d 316.

**{¶39}** Appellant argues that J.C. could not have been acting under the stress of the alleged sexual abuse when she made the statements to Adrianna because she had not seen him for a number of days. However, this argument is based upon the premise

that only the molestation itself could be the startling event provoking the statements. In applying the excited utterance exception liberally in child sexual abuse cases, an event subsequent to the molestation can be the startling event leading to the reflexive statement. *State v. Wampler*, 6th Dist. Lucas No. L-15-1025, 2016-Ohio-4756, ¶35; *State v. Butcher*, 170 Ohio App.3d 52, 2007-Ohio-118, 866 N.E.2d 13, ¶33 (11thDist.).

**{¶40}** In *Kincaid*, *supra*, the child's spontaneous exclamation was made at least two months after the abuse took place. As the child/victim was preparing to bathe, her younger sister swatted her in her vaginal area, causing the victim to yell that the sister was trying to hurt her like the defendant did. In holding that the trial court did not abuse its discretion in allowing the foster mother to testify concerning the statement, the Ninth District based its entire analysis upon the fact that the victim reacted spontaneously as a result of being hit by the other child. *Id.* at *5. Therefore, the startling event was not the prior sexual abuse, but the subsequent event that triggered the statements.

**{¶41}** Here, J.C. became emotional when her grandmother asked her whether appellant was engaging in inappropriate behavior. Although grandmother did not pursue the issue, Adrianna did. When Adrianna asked J.C. what was wrong, J.C. became emotional and cried. J.C. initially cried so hard that she could not talk. To this extent, J.C.'s statements regarding appellant's behavior did not occur as a consequence of reflective deliberation, but instead were a reaction to Adrianna's inquiry, reminding J.C. of the continuing eighteen months of sexual abuse.

**{¶42}** The foregoing supports the trial court's decision that J.C. was still under the influence of the startling event when she made the at issue statements. As appellant has not shown that the trial court erred in allowing Adrianna to testify about

11

J.C.'s statements, his second assignment lacks merit.

{¶43} Under his next assignment, appellant challenges the admission of: (1) the garbage bag containing J.C.'s underwear and appellant's shirt; and (2) the baggy containing the 36 pubic hairs found in the master bedroom closet. He contends alternatively that both items should have been excluded as irrelevant and that, if relevant, the potential for prejudice outweighs their probative value.

{¶44} "The admission or exclusion of evidence lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions save an abuse of discretion that has created material prejudice. *State v. Noling*, 98 Ohio St.3d 44, 781 N.E.2d 88, 2002-Ohio-7044, ¶43, citing *State v. Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904, 2001-Ohio-1290." *State v. King*, 11th Dist. Portage No. 2009-P-0040, 2010-Ohio-3254, ¶67. "Unless otherwise prohibited, evidence is relevant and consequently admissible if it tends to make a consequential fact more or less probable. Evid.R. 401 and Evid.R. 402. A trial court, however, must exclude relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.' Evid.R. 403; *State v. Tate*, 11th Dist. Lake No. 2010-L-145, 2011-Ohio-6848, ¶44." *Barker*, 2014-Ohio-4131, at ¶69.

{¶45} "'"Exclusion on the basis of unfair prejudice involves more than a balance of mere prejudice. If unfair prejudice simply meant prejudice, anything adverse to a litigant's case would be excludable under Rule 403. Emphasis must be placed on the word 'unfair.' Unfair evidence is that quality of evidence which might result in an improper basis for a jury decision. Consequently, if the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish, the

12

evidence may be unfairly prejudicial. Usually, although not always, unfair prejudicial evidence appeals to the jury's emotions rather than intellect.'" *Oberlin v. Akron Gen. Med. Ctr.* (2001), 91 Ohio St.3d 169, 172, 743 N.E.2d 890, quoting Weissenberger's Ohio Evidence (2000) 85-87, Section 403.3." *State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶24.

**{¶46}** As part of her disclosure, J.C. asserted that appellant had an obsessive interest in the growth of her pubic hair during the eighteen months of abuse. Evidence that he was maintaining both a collection of her underwear and a collection of pubic hair corroborates her testimony. To this extent, that no specific count in the indictment was predicated upon either item of evidence does not diminish their relevancy. Evid.R. 401 and 402.

**{¶47}** Appellant further argues admission was improper because the state failed to show that he was aware of either collection. However, both were found in an area associated with him. The small baggy of pubic hairs was found hidden in his baseball-card collection, and the garbage bag of underwear also containing one of his old t-shirts was located in a collection of wood chips he maintained in the garage attic. Based upon this, there was a connection supporting admissibility.

**{¶48}** Appellant also emphasizes that the state could not present any evidence demonstrating that any of the pubic hair was J.C.'s. But that appellant was maintaining *any* collection of public hairs constitutes confirmation of her assertion that he had an obsessive interest in such matters.

**{¶49}** Appellant has likewise failed to establish the probative value was not substantially outweighed by any unfair prejudice. Therefore, his third assignment is

13

without merit.

{¶50} Appellant's final two assignments are interrelated. Under his fourth assignment, he submits that his motion for judgment of acquittal should have been granted at the end of the state's case due to insufficient evidence. Under his fifth assignment, he claims that the verdicts are against the manifest weight of the evidence.

{¶51} Appellant's arguments are based solely on global challenges to J.C.'s credibility; he does not contest the lack of proof on any particular element or crime.

{¶52} When an appellant raises both sufficiency and manifest weight arguments in an appeal, the appellate court is only required to review the latter argument because "'a determination of whether a conviction is or is not supported by the weight of the evidence "necessarily rests on the existence of sufficient evidence."'" *State v. DiBiase*, 11th Dist. Lake No. 2011-L-124, 2012-Ohio-6125, ¶38, quoting *State v. Pesec*, 11th Dist. Portage No. 2006-P-0084, 2007-Ohio-3846, ¶44.

{¶53} "To determine whether a verdict is against the manifest weight of the evidence, a reviewing court must consider the weight of the evidence, including the credibility of the witnesses and all reasonable inferences, to determine whether the trier of fact "'lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983)." *State v. Thompson*, 11th Dist. Trumbull No. 2015-T-0087, 2016-Ohio-7154, ¶7.

{¶54} Regarding witness credibility:

{¶55} "'This court [is] not in a position to view the witnesses who testify below

14

and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of proffered testimony.' *State v. Long*, 127 Ohio App.3d 328, 335, 713 N.E.2d 1 (4th Dist.1998)(citations omitted). Therefore, in weighing the evidence submitted at a criminal trial, an appellate court must give substantial deference to the factfinder's determination of credibility. *State v. Tribble*, 2d Dist. Montgomery No. 24231, 2011-Ohio-3618, 2011 WL 2976890, ¶30." *State v. Crayton*, 11th Dist. Ashtabula No. 2016-A-0031, 2017-Ohio-705, ¶33.

**{¶56}** "'[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.' *State v. DaHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. When examining witness credibility, 'the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.' *State v. Awan*, 22 Ohio St.3d 120, 123 (1986). A fact finder is 'free to believe all, some, or none of the testimony of each witness appearing before it.' *State v. Thomas*, 11th District No. 2004-L-176, 2005-Ohio-6570, ¶ 29." *DiBiase*, 2012-Ohio-6125, at ¶36.

**{¶57}** Appellant first notes that J.C. lied when she said appellant required her to view pornography on her Kindle or another computer and draw pictures depicting sexual acts. While true, J.C. did not, however, retract any of her statements regarding the sexual acts. Moreover, J.C. gave a plausible explanation as to why she lied, embarrassment about her curiosity. To this extent, the jury was free to consider what, if any, impact the lies had on her credibility.

**{¶58}** Appellant further maintains that her testimony should have been rejected because some aspects are not believable: first, because she testified most of the sexual

15

conduct took place while other people were home; and second because she testified one sexual act occurred while they were sitting in a car in the parking lot of a dentist's office.

{¶59} Appellant was often the sole adult in care of the children. J.C. testified that while appellant would sometimes engage in incidents in the bedroom she shared with her two brothers, the majority of the incidents occurred in other rooms in the home, such as the living room or the upstairs hallway, while the boys were elsewhere. As to the "dentist's office" incident, J.C. stated that the boys were asleep in the back seat and it was already dark outside when he put his hand under her skirt. Moreover, that the boys may have been in the vicinity does not render her incredible.

{¶60} Appellant has failed to establish that the jury lost its way. Appellant's convictions are not against the manifest weight of the evidence and his fourth and fifth assignments are without merit.

{¶61} The judgment of the Lake County Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, P.J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in judgment only.

16